UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| HENRY W. HODGES, JR., | ) | CIVIL ACTION 4:09-2256-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. Upon consent of the parties, this case was referred to the undersigned for the conduct of all further proceedings and the entry of judgment. [1]

## I. PROCEDURAL HISTORY

---

[1] It is noted that the transcript pages are numbered incorrectly in the hearing transcript. However, it does not appear there are any pages of the hearing transcript missing from the record before the court.

Plaintiff, Henry W. Hodges, Jr., filed an application for DIB on September 13, 2004, with an alleged onset of disability of December 28, 2002. Plaintiff requested a hearing before an administrative law judge (ALJ) after his claims were denied initially and on reconsideration. At plaintiff's request, an ALJ conducted a hearing on February 13, 2007, at which both plaintiff and a vocational expert (VE) appeared and testified. On June 15, 2007, the ALJ issued a decision finding that plaintiff was not disabled. (Tr. 21-35). After the Appeals Council denied plaintiff's request for review (Tr. 1-4), the ALJ's decision became the Commissioner's final decision for purposes of judicial review under 42 U.S.C. Section 405(g). Plaintiff filed the instant action on August 25, 2009.

## II.  FACTUAL BACKGROUND

The plaintiff was born on November 24, 1955, and was fifty-one years of age at the time of her hearing before the ALJ. (Tr. 43). Plaintiff has a twelfth grade education and a few years of college. (Tr. 44). Plaintiff has past relevant work as a modular house salesperson and mobile home utility worker. (Tr. 33).

## III.  DISABILITY ANALYSIS

The plaintiff argues as follows, quoted verbatim:

1. The ALJ failed to find the claimant disabled as of his 50th birthday under grid rule 201.06.

2. The ALJ failed to resolve a fatal inconsistency between the vocational expert's testimony and the Dictionary of Occupational Titles.

      3.      The ALJ erred in ignoring or rejecting the opinions of medical sources.

      4.      The ALJ set out an incomplete "residual functional capacity" (RFC) that improperly failed to accommodate all of claimant's physical and mental limitations.

      5.      The ALJ's analysis of the plaintiff's credibility was contrary to the evidence and to the standards established by the law.

(Plaintiff's brief).

The Commissioner contends that the ALJ did not commit these errors and urges that substantial evidence supports the determination that plaintiff was not disabled.

In deciding that plaintiff is not entitled to benefits, the ALJ made the following findings in his decision of June 15, 2007.

      1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.

      2.      The claimant has not engaged in substantial gainful activity since December 28, 2002, the alleged onset date (20 CFR 404.1520(b) and 404.1571 et seq.).

      3.      The claimant has the following severe impairments: degenerative disc disease (DDD), degenerative joint disease (DJD, right knee), Hepatitis C, bipolar disorder and obesity (20 CFR 404.1520(c)).

      4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

      5.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift/carry 20 pounds occasionally and 10 pounds frequently, push/pull occasionally with his lower extremities, stand 2 hours in an 8 hour workday, walk 2 hours in an 8 hour workday and sit 6 hours in an 8 hour workday provided he is able

> to stoop, kneel, crouch and crawl but should never climb ladders, ropes or scaffolds. He is able to reach overhead frequently. The claimant is able to perform simple 1-2 step tasks. He should be in a low stress environment,[2] deal with things rather than people and is able to be around other employees throughout the workday but should have only occasional conversation or interpersonal interaction.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on November 24, 1955 and was 47 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 28, 2002, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 21-35).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable

---

[2] Low stress is defined as "non-production" work, with "production work" as performed in an assembly line job.

mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (1988). An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and

5

(5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if she can return to her past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing her inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). She must make a prima facie showing of disability by showing she was unable to return to her past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

### IV. ANALYSIS

Plaintiff argues that the ALJ failed to give sufficient weight to the reports and conclusions of Drs. Mallin, Robinson, and Naylor and the opinion of Ms. Barbara Scott, a licensed counselor who treated plaintiff. Further, plaintiff asserts the ALJ completely ignored the medical opinions of Dr. Lowder, plaintiffs' treating physician for the first eighteen months of his period of disability. Plaintiff contends the ALJ committed reversible error.

The medical records were set out in detail by the ALJ and in the parties' briefs. Therefore, the medical reports/records will not be repeated herein.

The Commissioner asserts that there was substantial medical evidence to support the decision of the ALJ. The defendant argues that the ALJ properly evaluated the physician's opinions and properly discounted them.

The opinion of a physician will be given controlling weight if it is supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  20 C.F.R. § 404.1527(d) (1997); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (although not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it.); Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983)(a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.").  The legal standard which applies is contained in 20 C.F.R. § 404.1527. Under § 404.1527, the opinion of a treating physician is entitled to more weight than the opinion of a non-treating physician. It is only given controlling weight, however, if

it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the[ record." See 20 C.F.R. §404.1527(d)(2).[3] Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Under § 404.1527, if an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then consider the weight to be given to the physician's opinion by applying five factors identified in the regulation: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 30 C.F.R. 404.1527(d)(2) (i-ii) and (d)(3)-(5). Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p, 1996 WL 374188. As stated in Social Security Ruling 96-2p:

> A finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion

---

[3] This standard, of course, is more stringent than the old "treating physician rule," which accorded a treating physician's opinion controlling weight unless the record contained persuasive evidence to the contrary. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

>will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

Id.

Dr. Kimberly Mallin was plaintiff's primary care physician since June 2, 2005. Dr. Mallin completed a treating physician's statement of plaintiff's functional capacities and limitations on August 15, 2006. (Tr. 277-280). In this statement, Dr. Mallin opined the heaviest weight plaintiff could occasionally and frequently lift was 10 pounds, he could stand up for 2-4 hours, sit for 4-6 hours, walk for 4-6 hours, stand up continuously for less than 2 hours, walk continuously for less than 2 hours, and sit continuously for 4-6 hours. Dr. Mallin opined plaintiff was moderately limited in his ability to push and pull with the arms and with balancing, and was severely limited in his ability to climb, stoop, knee, crouch and crawl. Further, Dr. Mallin found that plaintiff should be expected to suffer from illness or exacerbation that would incapacitate him from virtually all activities for one day or more for 1-2 times a month, would be expected to last for 1-2 days, and would be expected on average to suffer from fatigue sufficiently enough to interfere with normal work-like activities for 1-2 times per month lasting for 1-2 days. She also found that plaintiff complained of pain that significantly interferes with activities upon any sustained activity due to lower back disc disease. Dr. Mallin stated that she had been plaintiff's family medicine physician since June 2005.

The ALJ found Dr. Mallin's opinion not entitled to controlling weight stating that "there is no basis for according treating source weight to limitations articulated by Dr. Mallin

9

when the record indicates the claimant basically rejected treatment by this physician for these impairments." (Tr. 29). He further states that there was no basis for her assessment in her treating records, concluding no tests conducted pertaining to the claimant's residual functional capacity. However, the ALJ gave some weight to Dr. Mallin's opinion with relation to the portions he found consistent with the other evidence that he felt supported his decision. (Tr. 29).

Dr. David Robinson examined plaintiff at the request of the defendant. Dr. Robinson examined plaintiff on November 18, 2004, and concluded as follows with respect to work limitations:

> His general level of conditioning is poor. No obvious deficiencies of vision, hearing, or speech. He does have limitations in sitting, standing, and walking that are a result of morbid obesity[4], chronic back, and knee problems. He lightly[sic] could perform some light lifting, carrying, and handling of objects. He actually has reasonable mobility in the office and probably could perform many light tasks for a short period of time. Driving in a commercial capacity would likely be limited, he would have difficulty traveling.
>
> Motivation level seems poor, although he was a very energetic individual overall. His ability to understand, remember, and carry out instructions would be adequate. Also, his ability to respond to supervision, coworkers, and work pressures would likely be adequate. In the event that funds were distributed to him, I am not certain that he could manage them appropriately, given his history of drug abuse, although he reports that this is currently not active.

(Tr. 189).

The ALJ discounted the weight of Dr. Robinson's consulting examination and opinion concluding as follows:

---

[4] Plaintiff weighs over 350 pounds.(Tr. 52).

> As noted previously, over contrary advice, the claimant chose to use medications that would cause his liver function test to be elevated. Dr. Robinson interpreted the elevated liver function test results to mean active Hepatitis and voiced concern that the claimant had returned to abusing alcohol, given the claimant's poor history of rehabilitation. However, given the claimant's refusal of treatment for a life-threatening disease and deliberate use of medication, contraindicated (Tylenol and/or medications containing Tylenol), a more probable explanation is that the claimant's Hepatitis is not active and liver function test results are elevated as a result of the use of medication known to cause such results. Therefore, Dr. Robinson's assumption of active Hepatitis and weakness, fatigue and depression resulting from the active Hepatitis is based on what appears to be an inaccurate interpretation of the medical evidence due to lack of knowledge of the complete picture.[5] This error is further substantiated by Dr. Mallin's treatment notes that affirmatively indicate "no fatigue," "no weakness" and "no depression," contrary to Dr. Robinson's assessment . . . consequently, Dr. Robinson's opinion is given little weight.

(Tr. 30).

The ALJ also completely discounted the opinion of Dr. Peter Naylor after a consultative examination on August 26, 2005. Dr. Naylor found plaintiff's mood to be depressed, affect mildly expansive, fleeting suicidal ideations on about a monthly basis but not suicidal at the time of the examination, concentration to be fair, his performance fair on serial sevens, average intelligence and fair insight and judgment. Dr. Naylor's recommendation was as follows:

> I recommend the patient begin psychiatric treatment for bipolar disorder. I recommend AA as well as sobriety. The patient's depression, mania and irritability interfere with his ability to make the adjustments required for the

---

[5] Without citing any medical authority, the ALJ made a determination of the cause of plaintiff's Hepatitis symptoms different from the determination made by Dr. Robinson.

> work place. It is unclear to what extent his symptoms would clear with psychiatric treatment for bipolar disorder. I think the patient needs help managing his funds.

(Tr. 260).

The ALJ discounted Dr. Naylor's opinion finding it was based on plaintiff's statements and stated that "Clearly, the information provided by the claimant is skewed and prohibits an impartial, unbiased opinion as to the claimant's actual capabilities. As a result, Dr. Naylor's opinion is given no weight." (Tr. 30).

The ALJ also discounted the opinion of Barbara Scott, plaintiff's treating, licensed, professional counselor. Ms. Scott treated plaintiff in 2004 for four months. Ms. Scott completed a form for Listing of Impairment 12.04 for affective disorders in which she concluded plaintiff demonstrated elements of major depressive syndrome, manic syndrome, and bipolar syndrom. She further opined he had marked difficulty in maintaining concentration, persistence or pace, some social problems, and repeated episodes of decompensation, each of extended duration, and current history of one year or more of inability to function outside of a highly supportive living arrangement, with an indication of continuing need for such an arrangement, finding that his life is structured through daily AA meetings and his social world is AA. Ms. Scott also completed a form for Listing Impairment 12.08 for personality disorders, concluding he has persistent disturbances of mood or affect or pathological dependence, marked difficulty in maintaining concentration, persistence, or pace, repeated episodes of decompensation each of extended duration, and that plaintiff's condition does meet or equal the listing. When Ms. Scott was asked to complete an

Assessment of Psychological Functioning, she wrote "Cannot answer... too long since I have seen him." (Tr. 301).

The ALJ gave no weight to Ms. Scott's opinion finding that the record contained no objective testing. Further, the ALJ stated that "If the claimant's mental impairments were as severe as alleged by Ms. Scott, it is inconceivable he would be permitted to have custody of his son from a previous marriage." The ALJ further stated that Ms. Scott's suggestion that the claimant is "unable to work" and meets a listing are opinions that fall within the determination reserved to the Commissioner. He concluded with respect to Ms. Scott's opinion that "because of the lack of an identifiable basis upon which any of these opinions or assessment are rendered or can be supported, they are given no weight." (Tr. 28).

Furthermore, the ALJ completely discounted the opinions of the state agency physicians with respect to their mental functional capacity opinion finding that it provided for greater limitations than demonstrated in the record as a whole. The state agency found plaintiff has "moderate" limitations in the three broad areas of function. The ALJ concluded that the record demonstrates plaintiff maintains concentration to play poker for money at least weekly, sustains himself in normal activities such as driving, shopping, taking care of personal grooming and needs, and maintain some social relationships[6]. "Because of its inconsistency, the State agency mental assessments are given no weight." (Tr. 31).

---

[6] Plaintiff testified that his social relationships are only with his AA sponsors and group. Plaintiff testified that he as been clean and sober since August 10, 2004. (Tr. 53, 60, 61).

13

Plaintiff argues it was error for the ALJ to fail to consider any of the medical evidence from Dr. Lowder, plaintiff's primary care treating physician for the first eighteen months of his disability, from January 24, 2003, to at least July 16, 2004.

Dr. Lowder saw plaintiff on several occasions over the course of his treatment. On February 7, 2003, Dr. Lowder appears to have assessed a herniated disc in his right back based on x-rays, Hepatitis C, and chronic addiction. Dr. Lowder noted that plaintiff had prior addictions to pain medicines and alcohol, and that plaintiff stated that under no circumstances should he ever be given narcotics, Ultram, or any controlled medicines. Dr. Lowder's notes that obtaining medication was "...first priority in getting this active Hepatis treated. Told him he would die if we didn't do that." (Tr. 201). On February 26, 2003, Dr. Lowder examined plaintiff and diagnosed him with Hepatitis C, morbid obesity, allergic rhinitis and hoarseness. Dr. Lowder stated that he advised plaintiff to see Dr. Saleeby for his Hepatitis C and that it needed to be treated aggressively. (Tr. 200). There were several notes in the records from his visits referencing how serious his Hepatis C was considered and a notation about his "viral load" being high. Dr. Lowder noted on July 16, 2004, that plaintiff was "unable to work" and "Pt is terminal." (Tr. 192). On July 16, 2004, Dr. Lowder provided a handwritten note stating:

> I am writing concerning my patient, Mr. Henry Hodges. He has Hepatitis C which is a terminal illness. He has severe herniated disc at L4 in his back. I feel he is totally disabled and unable to work. Please call if you have any questions.

(Tr. 194).

The ALJ gave no weight to the opinions of consultative physicians, Dr. Naylor and Dr. Robinson, treating counselor, Ms. Scott, and the state agency medical opinions with regard to plaintiff's mental restrictions and limitations. The ALJ gave little weight to treating physician Dr. Mallin's opinion and did not discuss the notes or opinion of Dr. Lowder, a treating physician. The ALJ did not cite to any contradictory authority or justification.

The undersigned finds that there is no conflicting medical evidence or other valid reason cited by the ALJ which could justify ignoring the opinions of Drs. Mallin, Robinson, Naylor, Lowder, and Counselor Scott. The ALJ fails to present contradictory evidence from an examining or treating physician or otherwise justify completely ignoring the disability determination and functional assessment of plaintiff by these doctors, Ms. Scott, or the state agency reviewing consultants with regard to his mental limitations. Based on the evidence, the ALJ should have given these opinions proper weight. DeLoatche, supra. Accordingly, the undersigned concludes there is not substantial evidence to support the ALJ's decision. Thus, reversal is appropriate and the plaintiff is entitled to benefits from the alleged onset date. [7]

AND IT IS SO ORDERED.

---

[7] In plaintiff's reply, plaintiff's counsel noted that on December 11, 2009, defendant approved plaintiff for SSI back to June 17, 2007, which is the date immediately after the ALJ's unfavorable decision. Plaintiff's counsel points out that plaintiff was approved based on the medical and vocational evidence without the requirement of another hearing before an ALJ. Plaintiff's counsel asserts a "finding of an earlier onset date was statutorily precluded by the administrative agency, because res judicata does not allow a finding of disability prior to a previous ALJ's unfavorable decision." (Reply, p. 9-10). In the reply, plaintiff's counsel stated that she was attaching a copy of a letter confirming the above. However, no letter was attached.

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

March 15, 2011
Florence, South Carolina